IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **REALSCAPE GROUP LLC d/b/a REALOGIC SOLUTIONS** <br> 19300 Detroit Road <br> Cleveland, OH 44166 <br><br> Plaintiff(s), <br> v. <br><br> **ORACLE AMERICA, INC.** <br> ℅ Corporation Service Co., Registered Agent <br> 1160 Dublin Road, Suite 400 <br> Columbus, OH 43215 <br><br> Defendant. | CASE NO. <br><br> JUDGE <br><br> MAGISTRATE <br><br><br> **CLASS ACTION COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Realscape Group, LLC d/b/a/ Realogic Solutions ("Plaintiff" or "Realogic"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Oracle America, Inc. ("Defendant" or "Oracle") based upon personal information as to those allegations pertaining to itself and its personal circumstances, and upon information and belief, based upon investigation of counsel and facts that are matters publicly known, on all other matters and hereby state and allege as follows:

## PARTIES

1. Plaintiff is a limited liability company organized under the laws of the State of Ohio with a principal place of business located at 19111 Detroit Rd., Suite 302, Rocky River, Ohio 44116.

2. Defendant is a corporation organized under the laws of the state of Delaware which regularly conducts business in the state of Ohio and maintains its principal place of business at 2300 Oracle Way, Austin, TX 78741.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are each residents of separate states and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. This Court also possesses jurisdiction over the claims in this case since, upon information and belief, there are more than 100 class members and the aggregated claims of the class members are likely to exceed $5,000,000.

5. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate here pursuant to 28 U.S.C.§ 1391 given that a substantial part of the events or omissions giving rise to the claim occurred in Cuyahoga County, Ohio.

## GENERAL FACTUAL ALLEGATIONS

7. Oracle is a software company that offers products and services to small and medium-sized businesses like Realogic.

8. Among the products offered by Oracle is its "NetSuite" brand of cloud-based software which is purportedly designed to address a company's need to perform a broad range of administrative tasks a business requires including, among other functions, general ledger accounting, management of human resources, and payroll.[1]

---

[1] A list and explanation of NetSuite products is located on Oracle's website here: https://www.netsuite.com/portal/resource/articles/erp/netsuite-modules.shtml (last visited March 20, 2024).

9. Oracle markets the NetSuite software as cloud based solutions with minimal implementation time required once a buyer purchases a license to utilize the NetSuite brand of software products because they are marketed as products essentially available "off the shelf" or ready to be used almost immediately.

10. Oracle's practice is to offer a business the opportunity to utilize a specific NetSuite product or module if the business agrees to purchase a software license for each such module, which costs the business thousands of dollars per year for each license purchased depending on the NetSuite modules selected.

11. In addition, despite the software purportedly being usable "off the shelf," Oracle nevertheless requires licensees to purchase "implementation" services from Oracle for the purported purpose of easing the transition from the former platform to NetSuite modules.

12. The implementation service requires an additional fee and is pitched by Oracle as a needed service to ensure that the chosen NetSuite software is properly integrated with a business's operations.

13. Additionally, Oracle is aware that most small to medium sized businesses are unable to pay for these costly fees up front and, consequently, Oracle offers to "assist" these businesses with financing arrangements through Oracle's financing division.

14. Therefore, businesses are led to believe that they are engaging in a long term mutually beneficial relationship with Oracle itself: a purchase of a software license or licenses on credit with Oracle and, in exchange, Oracle will ensure that properly functioning NetSuite products are successfully implemented into the operations of their business.

15. However, Oracle does not disclose up front that it intends to sell the financing to a third party. Rather, Oracle's hidden purpose is to secure these financing commitments from

3

businesses, costing hundreds of thousands of dollars, which allows Oracle to be paid the entirety of its fees up front regardless of whether Oracle ever delivers functioning software.

16. Moreover, this deceit disincentivizes Oracle from ensuring that a business actually receives the benefit of the software needed to perform their business functions.

17. Upon information and belief, Oracle's tactic to secure these financing commitments is to offer "discounts" on the license and implementation fees as an enticement but with no real plan to ensure the functionality of any software provided.

18. In fact, during the sales process, Oracle ensures businesses that NetSuite software is capable of quick implementation since its cloud-based software is essentially "off the shelf" and requires no extensive customization to be usable.

19. In reality, the NetSuite products are not usable "off the shelf," are not actually capable of performing the functions promised without extensive customization, and, as a result of Oracle selling the financing, license fees are due immediately regardless of whether the software performs as promised or is delivered on the timetable needed by the business.

20. As a result, businesses spend countless wasted hours and other resources attempting to integrate NetSuite into their operations without the promised "ease" or functionalities.

21. Moreover, once Oracle receives a commitment from a business, Oracle refers the business to a subcontractor outside the U.S. along with selling the financing to a third party effectively distancing itself from any problems once a business commits to acquiring a NetSuite license.

**FACTS SPECIFIC TO REALOGIC**

22. Realogic is a privately held IT Services, healthcare staffing, and IT Consulting company based in Rocky River, Ohio with under 250 employees.

23. In or about the fall of 2022, Realogic began reviewing its software options for handling its general ledger accounting and other administrative tasks.

24. Realogic reviewed Oracle's marketing materials and believed its Software Packages had some applications that might benefit Realogic, including its accounting, human resources, and payroll functions.

25. Starting in 2022 and into 2023, Oracle pitched its software to Realogic and provided them price quotes which included multi-year license fees and implementation charges.

26. Oracle represented that, if Realogic committed to purchasing a software license from Oracle in May 2023, Oracle would ensure that its software would be fully implemented and integrated into Realogic's business operations by July 1, 2023.

27. As a result of Oracle's representations, which were material to Realogic's decision to commit to Oracle, Realogic agreed to acquire software licenses from Oracle in exchange for a license fee for each product and agreed to pay Oracle's implementation charges related to the software.

28. Realogic also agreed to finance the transaction through Oracle's related financing company, committing to paying $184,000.00 over 24 months.

29. In reality and unbeknownst to Realogic at the time, but clearly known to Oracle, implementation by this date was neither possible nor realistic and Oracle lacked the capability of ensuring implementation by any specified date.

30. Soon after Realogic committed to purchasing software licenses for Oracle's accounting, payroll, and human resources modules, Oracle assigned a sub-contractor from Latin-America to perform functions Oracle had originally committed to performing.

31. In addition, Oracle sold the financing to another company without regard to whether Realogic actually received the products Realogic thought it had acquired in exchange for the financing.

32. Meanwhile, Realogic never received the benefit of the software promised by Oracle, as its products clearly were not "off the shelf" ready, were replete with data errors and had other defects which cost Realogic time and expense attempting to make the software function as intended.

33. In reality, Oracle's NetSuite products are not fit for use "off the shelf" as marketed and the software is not usable without substantial customization.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of a class of similarly situated individuals (the "Class") defined as follows:

> All businesses, nationwide, at or under 1,000 employees, which within the preceding four years from the date of filing of this complaint have agreed to purchase NetSuite software licenses from Oracle and agreed to pay implementation fees but have not obtained fully functioning software.

35. Excluded from the Class is Defendant; any entity in which Defendant possesses a controlling interest, is a parent or subsidiary, or which is controlled by Defendant; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

36. Plaintiff reserves the right to modify and/or amend the Class and any Ohio Subclass definition, including but not limited to creating subclasses, as necessary.

37. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

38. *Numerosity*. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, thousands of businesses have been victimized by Oracle's business practices.

39. *Commonality*. There are questions of fact and law common to the class, including but not limited to:

   a. Whether Defendant's terms and conditions actually apply to the contract(s) between the Defendant and the Plaintiff and Class members;

   b. Whether Defendant breached its agreement to provide software to the Plaintiff and Class members;

   c. Whether Defendant's representations to the Plaintiff and Class members of software functionality and timeliness are accurate or misleading;

   d. Whether Plaintiff and Class Members suffered injuries as a result of Defendant's wrongful conduct; and

   e. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendant's wrongful conduct.

40. *Typicality*. The named Plaintiff's claims are typical of the claims of the class in that each has been the victim of Oracle's business practice of offering its NetSuite software despite its inoperability for the needs of the businesses.

41. *Adequacy*. Plaintiff is an adequate class representative. Plaintiff has the same interest in the litigation as the Class members, is committed to the prosecution and just resolution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

42. Plaintiff is not subject to any individual defenses unique from those applicable to other Class members.

43. *Predominance*. The questions of law and fact common to Class members predominate over any questions which may affect only individual members.

44. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's business practices have inflicted substantial damages in the aggregate which would go unremedied without certification of the Class. Plaintiff and Class members have been harmed by Defendant's wrongful conduct and/or action. Litigating this action as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct and/or inaction. Plaintiff is unaware of any difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

45. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2), because Defendants have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLAIMS FOR RELIEF

### COUNT ONE
### Declaratory Relief
### 28 U.S.C. §§ 2201, *et seq.*
### (On behalf of the Plaintiff and Class)

47. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

48. At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

49. An actual controversy exists between Plaintiff, as a representative of the putative class, and Defendant concerning their respective rights and duties with respect to one another given the commitments made between Plaintiff and Defendant with respect to paying license and implementation fees in exchange for functioning software programs.

50. Based on the allegations herein, *supra*, Plaintiff seeks a declaration from this Court that:

   a. No contract exists between Plaintiff and Defendant and any obligations related to any alleged contractual relationship are null and void; and

   b. Plaintiff is entitled to restitution and/or indemnity from Defendant related to any amount paid to Defendant by Plaintiff or as a result of Plaintiff's acquiescence to Defendant's financing terms.

## COUNT TWO
### Unjust Enrichment
**(On behalf of the Plaintiff and Class)**

51. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

52. Defendant accepted payment related to software licenses that Plaintiff had attempted to acquire.

53. However, the software licenses were never usable because Defendant never provided the software as Defendant represented it would.

54. Plaintiff conferred a benefit upon Defendant in the form of a financing agreement and other compensation, which Defendant is aware of.

55. Defendant has been unjustly enriched at the expense of Plaintiff and the proposed class by retaining the payments for software products that did not provide.

56. Defendant's retention of these benefits under the circumstances would result in an unjust enrichment.

## COUNT THREE
### Breach of Contract
**(On behalf of the Plaintiff and Class)**

57. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.\

58. Plaintiff agreed to purchase license fees from Oracle and pay for the timely implementation of NetSuite software for the use of such products in Plaintiff's business.

59. There was no meeting of the minds on any other contractual terms, as Oracle never presented a detailed list of terms and conditions prior to the parties' agreeing to the transaction.

60. Plaintiff performed its obligations by committing to payment of the license fees and implementation charges.

61. Oracle breached the terms of the agreement by failing to deliver functioning software or timely implementing NetSuite products as promised.

62. As a result of Oracle's breach of the parties' agreement, Plaintiff has suffered damages attributable to Oracle's breach.

## COUNT FOUR
### Negligence
### (On behalf of the Plaintiff and Class)

63. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

64. Oracle owed a duty of care to ensure that it provided functioning NetSuite software to Plaintiff and others similarly situated.

65. Oracle breached the duty of care by failing to act reasonably under the circumstances.

66. Plaintiff suffered actual damages as a result of Oracle's failure to act reasonably under the circumstances.

## COUNT FIVE
### Negligent Misrepresentation

67. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

68. Oracle represents that its NetSuite software is easily integrated into existing business operations and that its software is suitable for the intended use.

69. Oracle's employees made these representations either (a) without regard to whether or not the representations were accurate or (b) knowing that the representations were likely not accurate intending the Plaintiff and others similarly situated would rely on these representations.

70. Plaintiff and others similarly situated, relied on these representations to their detriment and suffered damages as a result attributable to Oracle.

## COUNT SIX

**Breach of Warranty**

71. Plaintiff hereby restates all preceding paragraphs as if fully rewritten herein.

72. Oracle understands the purpose for which the NetSuite software products are required and implies, if not outright states, that the software is suitable for the required purposes.

73. As a result, Oracle warrants that its NetSuite software will meet these requirements.

74. NetSuite does not meet the requirements as warranted by Oracle and this breach of warranty has caused Plaintiff and others similarly situated damages.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of others similarly situated, hereby respectfully requests that the Court:

A. Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff as the Class representative, and appoint the undersigned counsel as Class counsel;

B. Issue the requested declaratory relief set forth in Count One;

C. Award judgment in favor of Plaintiff on Counts Two through Six of the Complaint;

D. Award Plaintiff damages related to the claims alleged;

E. Award Plaintiff its costs and attorneys' fees

F. Award Plaintiff and Class members pre- and post-judgment interest, to the extent allowable; and

G. Award such other and further relief as equity and justice may require.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully Submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Jeffrey A. Crossman (0073461)
Marita I. Ramirez (0101882)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com

*Counsel for Plaintiff and putative class*