# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| REALSCAPE GROUP LLC dba REALOGIC SOLUTIONS, | ) CASE NO. 1:24-CV-00558 ) ) JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) ) |
| vs. | ) ) |
| ORACLE AMERICA, INC., | ) ) |
| Defendant. | ) **ORDER TRANSFERRING VENUE** |

This is a class action matter in which Plaintiff, Realscape Group LLC dba Realogic Solutions ("Realogic"), claims that Defendant Oracle America, Inc. ("Oracle") sold it "NetSuite" software and implementation services on financing terms, but immediately sold the debt and subcontracted the implementation work. (ECF No. 1, PageID #5–6). Since NetSuite requires implementation to ensure that the software is properly integrated with a business's operations, and since Oracle (nor its subcontractor) ever completed the implementation work, Realogic claims that it never received a benefit from its purchase. (*Id.* at PageID #3; 6). Realogic seeks to certify a class defined as "[a]ll businesses, nationwide, at or under 1,000 employees, which within the preceding four years from the date of filing of this complaint have agreed to purchase NetSuite software licenses from Oracle and agreed to pay implementation fees but have not obtained fully functioning software." (*Id.* at PageID #6).

Oracle moved to dismiss the complaint, or alternatively, transfer venue to the Central District of California pursuant to a forum selection clause in the parties' work order. (ECF No. 10). Realogic has moved to amend the complaint. (ECF No. 13). For the following reasons, Oracle's motion to transfer venue is **GRANTED**. Since the transferee court is the appropriate

1

court to decide whether to dismiss or permit Realogic to amend its complaint, the Court does not decide either motion.

I.     FACTUAL BACKGROUND

Realogic is a limited liability company engaged in information technology services and consulting and healthcare staffing. (ECF No. 1, PageID #4). Realogic decided to purchase Oracle's NetSuite software to benefit its accounting, human resources, and payroll functions, after receiving four estimates from Oracle dated between January 2022 and May 18, 2023. (*Id.* at PageID #5; ECF Nos. 10-3, 10-4, 10-5, 10-6). Each estimate states that "Upon your execution, this document is a binding order for the products and services set forth herein." (ECF No. 10-3, PageID #100; ECF No. 10-4, PageID #105; ECF No. 10-5, PageID #110; ECF No. 10-6, PageID #115). The estimate dated January 20, 2022, is signed by Leslie Page. (ECF No. 10-6, PageID #115). Estimates dated December 19, 2022, December 22, 2022, and May 18, 2023, are signed by Richard McDonald. (ECF No. 10-3, PageID #100; ECF No. 10-4, PageID #105; ECF No. 10-5, PageID #110). Realogic and Oracle also signed three Fixed Price Statements of Work ("SOW") dated January 28, 2022, December 30, 2022, and January 9, 2023. (ECF No. 10-7, PageID #123; ECF No. 10-8, PageID #132; ECF No. 10-9, PageID #140). The SOWs state that they are "binding upon execution by [Realogic] and acceptance by Oracle," though each has a different "valid through" date. (ECF No. 10-7, PageID #123 (valid through May 31, 2023); ECF No. 10-8, PageID #123 (valid though February 28, 2022); ECF No. 10-9, PageID #140 (valid through February 28, 2023)).

Included in each of those signed estimates is the following language: "The products and/or services set forth in this Estimate/Order Form, between you and the Oracle entity referenced above,

are governed by the Subscription Services Agreement v020122[1] found at https://www.oracle.com/corporate/contracts/cloud-services/netsuite/ (including any referenced URL terms)." (ECF No. 10-6, PageID #114). Each SOW also provides, on the first page under Section 1, "Agreement":

> This [SOW] describes the professional services (the "Professional Services") to be performed by [Oracle] for Customer (collectively "Parties") pursuant to the applicable agreement governing Oracle's performance of Professional Services (the "PS Terms") listed below (in order of preference, as applicable):
> (i)   The Professional Services Addendum to the Subscription Services Agreement entered by and between the Parties;
> (ii)  The separate Professional Services Agreement entered by and between the Parties; or
> (iii) If neither (i) nor (ii) are applicable, the Professional Services Agreement found at https://www.oracle.com/corporate/contracts/cloud-services/netsuite/ (or such other URL as specified by Oracle).

(ECF No. 10-7, PageID #117; ECF No. 10-8, PageID #126; ECF No. 10-9, PageID #134).

Relevant here, the Subscription Services Agreement ("SSA") provides:

> 12. **Governing Law and Jurisdiction**. This Agreement is governed by the substantive and procedural laws of the State of California and each party agrees to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco or Santa Clara counties in California in any dispute arising out of or relating to this Agreement. The Uniform Computer Information Transactions Act does not apply to this Agreement or to orders placed under it.[2]

(ECF No. 10-11, PageID #157).

---

[1] The Court quotes from the January 20, 2022 estimate because, according to later estimates, the version of the Subscription Services Agreement referenced in the first order controls the parties' contract. (*See* ECF No. 10-3, PageID #99; ECF No. 10-4, PageID #104; ECF No. 10-5, PageID #109) ("Notwithstanding the foregoing, if this Estimate/Order form is an 'add-on order,' to the original Cloud Services Estimate/Order Form, the terms of the Customer's original Estimate/Order Form and the version of the Subscription Services Agreement in effect on the date of the original order, will apply to the add-on order, even if the add-on order is placed after an updated version of the Subscription Services Agreement is published.").

[2] This language is identical in v060122 of the SSA, which is referenced in the December 19, 2022, December 22, 2022, and May 18, 2023 estimates. (*See* ECF No. 10-12, PageID #167; ECF No. 10-10, PageID #148).

Oracle allegedly told Realogic that if Realogic purchased NetSuite in May 2023, Oracle would have the software fully implemented and integrated into Realogic's business operations by July 1, 2025. (ECF No. 1, PageID #5). Realogic agreed to purchase NetSuite licenses in exchange for a licensing fee and implementation charges in the amount of $184,000.00, which Realogic financed through Oracle's financing company for a 24-month term. (*Id.*). Realogic claims that Oracle knew that it could not implement the software by any specified date. (*Id.*). After Realogic purchased NetSuite and the implementation service, Oracle assigned a sub-contractor from another country to perform the functions that Oracle itself had committed to perform. (*Id.*). Oracle also sold Realogic's debt to another company. (*Id.* at PageID #6). Realogic claims that it never received the benefit of the software because the product was not "off the shelf" ready and contained data errors and other defects. (*Id.*).

Oracle has moved to dismiss the complaint, or alternatively, transfer this case to the Northern District of California based on the SSA forum-selection clause. (ECF No. 10). Realogic opposes dismissal and transfer. (ECF No. 20). Though Realogic acknowledges that a party to a contract may incorporate contract terms by reference to a separate document, Realogic claims that Oracle deceptively buried the SSA language and link in "nondescript fine print." (*Id.* at PageID #242, 245–48). Realogic also argues that Oracle fraudulently induced it to purchase NetSuite and the implementation plan, and that Oracle has no connection to the selected forum. (*Id.* at PageID #248–50). Oracle counters that the incorporation of the SSA appears under the heading "Terms of Your Order," Section "**1. Agreement**," in the very first sentence. (ECF No. 21, PageID #267). The typeface in this section of the estimate is the same size as the rest of the estimate. (*Id.*). Oracle also points out that Realogic did not assert a fraud claim in its complaint; thus, Realogic's claim that the SSA should be unenforceable due to fraudulent inducement should fail. (*Id.* at PageID

#271–72). Had Realogic asserted a fraud claim, Oracle argues that Realogic's ability to read and understand the estimate and POW prior to signing defeats that claim. (*Id.* at PageID #272–74).

## II. MOTION STANDARD

A party to a contract may enforce a forum-selection clause through a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). That statute states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). This protects the parties' "legitimate expectations and furthers vital interests of the justice system." *Id.* at 63 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). When presented with a valid forum-selection clause, district courts must not afford the plaintiff's forum choice any weight and should not consider arguments about the parties' private interests, which automatically weigh in favor of the preselected forum. *Id.* at 63–64. Instead, the Court considers only public interest factors:

> administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (internal quotation marks omitted). "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

5

### III. DISCUSSION

The question before this Court is whether Realogic is bound by the forum-selection clause contained in the SSA, and if so, whether transfer under the forum-selection clause is appropriate. Though the Complaint seeks a declaration that no contract between the parties exists (ECF No. 1, PageID #9), Realogic forfeited that position in response to the motion to dismiss; Realogic argues instead that a contract exists, but the SSA is not incorporated into it. (ECF No. 20, PageID #244) ("Here the parties had an agreement on the basics: that Oracle would agree to provide software it possessed for the requested functions and Realogic would pay for the software license."); *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) ("this court . . . deems issues not raised in response to dispositive motions forfeited."). Thus, when asking whether Realogic is bound by the forum-selection clause, the real question is not whether Realogic is bound to any contract with Oracle at all, but whether the SSA was incorporated into the contract.

#### A. The SSA is incorporated into the parties' contract.

There is little question that the SSA is incorporated into the parties' contract. When a party to a contract has the opportunity to read and understand it before signing, that party is generally bound by the contract's terms. *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (citing *Allied Steel Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960), *cert. denied*, 531 U.S. 1148 (2001)). "When documents are incorporated by reference into a [contract], they are to be read as though they are restated in the contract." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003). Such reference "must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." *Selective Way Ins. Co. v.*

6

*Glasstech, Inc.*, No. 16-cv-1177, 2018 WL 1871092, at *2 (N.D. Ohio Apr. 19, 2018) (quoting *Volovetz v. Tremco Barrier Sols.*, 74 N.E.3d 743, 751–52 (Ohio Ct. App. 2016)).³

Oracle directs the Court to *River Supply, Inc. v. Oracle Am., Inc.*, No. 3:23-cv-02981, 2023 WL 7346397, at *11 (N.D. Cal. Nov. 6, 2023), which held that the estimate and SOW at issue in that case incorporates the SSA. Addressing the plaintiff's claim that the hyperlink is not conspicuous enough and that the plaintiff had to "hunt" for the subscription agreement on the website, which relied on cases concerning consumer contracts, the court explained:

> This is not a consumer contract involving buried terms: it is a business contract for services costing nearly $170,000. The section titled **1. Agreement** specifies that the contract incorporates the [SSA], and the hyperlink that follows links to a webpage with four conspicuous options. Option one (Cloud Services Contracts) is the [SSA], which is easily accessible, not hidden. Even if one were to apply the consumer cases, this identifies the relevant agreement more specifically than the clickwrap cases (where courts uphold terms of service in clickthough agreements where consumers must click on "I agree" after being presented with the hyperlink to the terms of service). *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (courts routinely enforce clickwrap agreements but are reluctant to enforce browserwrap agreements, where conditions of use are posted on the website, generally on a link at the bottom of the screen).

---

³ Oracle advocates for application of the SSA's choice-of-law provision to apply California law to its motion. (ECF No. 10-1, PageID #69–70). To the extent that the parties disagree over whether the SSA (which contains the choice-of-law provision) is part of the parties' contract, the Court will apply its forum law (Ohio law) to that question; there is debate among the circuits as to whether the choice-of-law stated in a contract applies when there is a challenge to enforceability of the provision itself, though the majority hold that a contractual choice-of-law provision does not govern formation issues. *See, e.g.*, *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 531 n.11 (5th Cir. 2020) (holding that a contractual choice-of-law provision does not govern whether a contract was formed); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *John T. Jones Const. Co. v. Hoot Gen. Constr. Co.*, 613 F.3d 778, 782–83 (8th Cir. 2010) (applying the forum state's law to the contract formation question, and the contract's choice-of-law provision to questions of interpretation and construction); *Trans-Tec Asia v. MV Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such provision was a valid contractual term and was legitimately incorporated into the parties' contract."); *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 661 n.9 (10th Cir. 2006) (referring to "the logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid").

That said, "Resort to the principles of conflict of laws is necessary only if there is an actual conflict between local law and the law of another jurisdiction." *Barents Navigation Ltd. v. W. Overseas, Inc.*, No. 3:98CV7606, 1999 WL 1490855, at *3 (N.D. Ohio Dec. 13, 1999). Since neither party argues the existence of conflict between the laws of Ohio and California, the Court will apply its forum law. (ECF No. 10-1, PageID #70); (ECF No. 20).

> . . .
> The issue for any contract that incorporates terms is whether the incorporated terms are obvious and easily available and the party consents to them. *In re Holl*, 925 F.3d [1076, 1084 (9th Cir. 2019)]. Here, the section titled **Agreement** specifies that it incorporates two agreements (the [SSA] and the Data Processing Agreement) and links immediately to a page that allows easy access to those agreements. This is at least as conspicuous notice of the terms and easy access to them as the consumer cases with a hyperlink in bold or color.

*Id.* at *11 (emphasis in original). At least one district court in the Sixth Circuit concluded that additional terms and conditions to the parties' contract, which were only available upon request and never requested by the plaintiff, were enforceable due to the plaintiff's "affirmative duty to familiarize itself with the terms and conditions contained in other documents incorporated by reference." *S. Star Cent. Gas Pipeline, Inc. v. Edgen Murray Corp.*, No. 4:15-cv-145, 2016 WL 4942030, at *3 (W.D. Ky. Sept. 25, 2016) (quoting *Glenn Hunter & Assoc., Inc. v. Union Pac. R.R. Co.*, 135 F. App'x 849, 855 (6th Cir. 2005)).

Realogic does not address *River Supply*, but instead advances arguments similar to those that *River Supply* rejected. For example, Realogic cites *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) and *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021), which both declined to enforce arbitration provisions in consumer contracts accessible through a "nondescript hyperlink." (ECF No. 20, PageID #247). But like California, Ohio recognizes that courts are bound to approach enforcement of consumer contracts with more skepticism, as a matter of equity, than a commercial contract between two businesses. *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 866 (Ohio 1998); *see Swayze v. Huntington Inv. Co.*, No. 20630, 2005 WL 1208116, at *5 (Ohio Ct. App. May 20, 2005) (declining to exercise the skepticism expressed by *Williams* relating to consumer contracts because the contract at issue was a commercial brokerage agreement); *Smith v. Nationwide Mut. Ins. Co.*, 120 N.E.3d 72, 80 (Ohio Ct. App. Sept. 18, 2018) (quoting *Williams*

8

and observing that contract between plaintiff and defendant was "more akin to a commercial contract," leading to the court's conclusion that a "difference in bargaining power between the parties was [not] great enough to support a finding of procedural unconscionability").

The Court is persuaded by *River Supply*'s analysis of the parties' contract. Following the various line-item costs described in the estimate, but before the signature line, the language incorporating the SSA appears in the same sized font as the rest of the estimate, and appears in the very first sentence under a bold heading, "**1. Agreement**." (ECF No. 10-3, PageID #99; ECF No. 10-4, PageID #104; ECF No. 10-5, PageID #109; ECF No. 10-6, PageID #114). The SOWs also contain a large-font, bold heading, "**1. Agreement**," beneath which the SSA incorporation language appears. (ECF No. 10-7, PageID #117; ECF No. 10-8, PageID #126; ECF No. 10-9, PageID #134). This language is clear and conspicuous, and plainly referenced in the estimates and SOWs.

In its discussion of procedural unconscionability, the *Smith* court cited the parties' extensive business relationship that spanned more than two years as one reason to uphold the challenged contractual provision. 120 N.E.3d at 80. The court also noted that the plaintiff had five days to review the contract at issue, which it deemed a sufficient amount of time to read and understand the contract. *Id.* Here, Realogic and Oracle had been negotiating the terms of Realogic's NetSuite purchase for about 17 months before it was finalized. The link to the SSA appeared in every estimate, including the very first estimate dated January 20, 2022. (ECF No. 10-6, PageID #114). Realogic cannot claim that it had no notice of the SSA when it had over a year to review and understand the terms of the parties' contract.

Realogic also does not present a "strong showing" that the forum-selection clause should be set aside. (ECF No. 20, PageID #248); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15

(1972). While Realogic argues that it "has alleged facts that demonstrate significant misrepresentations that preclude any formation of an agreement that contains the terms set forth in Oracle's [SSA]," Realogic has not pleaded any such claim; rather, this is the subject of Realogic's proposed amended complaint, which the Court has not yet accepted. The Court therefore declines to address this argument in considering the validity of the SSA's forum-selection clause. *See Bates v. Green Farms Condo Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."). The Court concludes that the SSA—and thus, the forum-selection clause—were properly incorporated into the parties' contract.

### B. Transfer under the forum-selection clause is appropriate.

Having determined that the forum-selection clause is incorporated into the parties' contract, the Court must now decide whether to enforce it. The Court applies federal common law to this question. *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 216 (6th Cir. 2021) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 827–28 (6th Cir. 2009).

The relevant public-interest factors listed in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) weigh in favor of transfer. There is not a "localized controversy" such that there is local interest in having this matter decided in the Northern District of Ohio. *Id.* Realogic argues that it has no sustained contract with California, and that this dispute has nothing to do with any activity in California. (ECF No. 20, PageID #250). But beyond the fact that Realogic consented to litigate this matter in Northern District of California, the complaint seeks to certify a **nationwide class**. (ECF No. 1, PageID #6). While Realogic may be based within this District, the Court has no information before it concerning where the bulk of the class is located to even consider that as a factor weighing against transfer. The Court must refrain from favoring this forum simply because

10

it is where Realogic filed its case. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)

Nor is this forum "at home with the law that must govern" this action, *Piper Aircraft*, 454 U.S. at 241 n.6; the forum-selection clause requires application of "the substantive and procedural laws of the State of California." (ECF No. 10-11, PageID #157). Transferring the case to the Northern District of California, which will apply its own laws and procedural rules, will avoid any further issues related to any conflict of laws. *Piper Aircraft*, 454 U.S. at 241 n.6. The Court therefore concludes that this matter must be transferred to the Northern District of California, San Francisco Division.

## IV. CONCLUSION

Based on the foregoing, this case is **TRANSFERRED** to the Northern District of California, San Francisco Division, pursuant to the parties' valid forum-selection clause. This Court will not reach Oracle's motion to dismiss or Realogic's motion for leave to amend its complaint; since the parties agreed to litigate any disputes in the Northern District of California, that court should address the parties' substantive arguments.

**IT IS SO ORDERED.**

Dated: September 2, 2025

---
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**